Zeta N. GANDY, Appellant,

v.

John Cecil CULPEPPER, Jr., Appellee.

No. 7707.

Court of Civil Appeals of Texas, Beaumont.

Sept. 25, 1975.

---

**334**

Charles C. Smith, Cameron, for appellant.

John B. Henderson, Jr., Cameron, for appellee.

KEITH, Justice.

This trespass to try title action involves a fifty acre tract in the J. K. McLennan Survey in Milam County.[1] Plaintiff below brought suit and recovered judgment for title and possession in a non-jury trial. At defendant's request, the trial court filed extensive findings of fact and conclusions of law. It is from this judgment that the defendant has perfected her appeal to this court.

Upon the trial, by competent evidence, plaintiff showed a common source of title, connected his title to such common source by a complete chain of title, and proved the superiority of his title to the record title of the defendant. *Jones v. Mid-State Homes, Inc.,* 163 Tex. 229, 356 S.W.2d 923, 925 (1962); *Best Investment Company v. Hernandez,* 479 S.W.2d 759, 762 (Tex.Civ.App., Dallas, writ ref'd n.r.e.). He was entitled to judgment unless defendant could defeat such recovery upon one or more of the defenses tendered by her pleadings.

Although defendant had pleadings, and offered some evidence in support thereof, as to other defenses to the suit, the ten points of error brought forward all complain of the trial court's findings of fact involving only the ten-year statute of limitations. Findings of fact numbers one, five, eight, and eleven[2] are attacked by the no evi-

---

1. The land involved in this suit lies immediately to the west of the land involved in *Gandy v. Pemberton,* 389 S.W.2d 612 (Tex. Civ.App., Austin 1965, writ ref'd n.r.e.). Our defendant-appellant is the surviving widow of Jim Gandy, the appellant in the cited case, and we find many references in our record to the "York Hog Pasture" mentioned therein.

2. We quote the several findings of fact which are attacked:
*No. 1:* "I find as a fact that on October 1, 1957 Mary Lake Henderson Culpepper [deceased mother of the present plaintiff under whom he claims], was in peaceable posses-

sion of the 50 acre tract of land in question."
*No. 5:* "I find as a fact that Defendant, and those whose title she holds, did not have exclusive, peaceable, continuous and adverse possession of the land in controversy cultivating, using and enjoying the same, for any period of ten years, or longer, prior to October 23, 1957, the date when this suit was filed."
*No. 8:* "I find as a fact that the tract of land in question was not purchased for a valuable consideration by Jim Gandy from M. E. Ashley on January 4, 1939."
*No. 11:* "I find as a fact that Defendant, and those whose title she holds, never made an

dence and great weight and preponderance of the evidence points. In passing thereon, we will do so in accordance with the rules laid down in *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

The trial court having filed findings of fact and conclusions of law in this non-jury trial, the rule governing our review is that set out in *4 McDonald, Texas Civil Practice, § 16.05*, p. 11 (1971 Rev.Vol.):

"Findings of fact have the same force and dignity as does a jury verdict upon special issues, and when supported by some competent evidence will not be disturbed on appeal, even though they appear to be against the preponderance of the evidence, unless they are so against the overwhelming weight of the evidence as clearly and manifestly to be wrong."

See also, *Red Arrow Freight Lines v. Howe*, 480 S.W.2d 281, 285 (Tex.Civ.App., Corpus Christi, 1972, writ ref'd n.r.e.); *Dorbandt v. Jones*, 492 S.W.2d 601, 602 (Tex.Civ.App., Austin 1973, writ ref'd n.r.e.); *Ives v. Watson*, 521 S.W.2d 930, 932 (Tex.Civ.App., Beaumont 1975, writ ref'd n.r.e.); *4 Tex. Jur.2d, Rev., Part 2, Appeal & Error Civil Cases*, § 783, p. 279 (1974).

█ Moreover, in a non-jury case, the trial court is the judge of the credibility of the witnesses and the weight to be given their testimony. Thus, we will review the record under the same standards as are used in reviewing a jury verdict. *Beck v. South*, 423 S.W.2d 188, 189 (Tex.Civ.App., Fort Worth 1968, writ ref'd n.r.e.).

Having reviewed the evidence carefully under the standards set out above and being of the opinion that the judgment of the trial court is free of reversible error, each of the defendant's points of error are overruled for the reasons now to be stated.

Plaintiff's petition contained the allegations required in an action of trespass to try title as set out in Tex.R.Civ.P. 783, including sub-section (d), "[t]hat the plaintiff was

in possession of the premises or entitled to such possession." Plaintiff alleged that he was in possession upon the date of the ouster. In his action, he was required to allege and prove only his right to present possession of the land. *Stephens v. Motl*, 82 Tex. 81, 18 S.W. 99, 100 (1891); *City of Mission v. Popplewell*, 156 Tex. 269, 294 S.W.2d 712, 714 (1956). Plaintiff showed by competent evidence his present right of possession of the land. The trial court's finding of fact number one [as quoted in fn. 2, *supra*] may have been incorrect, as conceded by plaintiff; but, under the record which we review, no reversible error is shown. Plaintiff could recover only upon a showing of actual possession and ouster by defendant *or* a present right of possession. He showed the latter by competent evidence. *Watkins v. Smith*, 91 Tex. 589, 45 S.W. 560, 561 (1898); *Reiter v. Coastal States Gas Producing Co.*, 382 S.W.2d 243 (Tex.1964).

Defendant accurately summarizes her position on appeal in this manner:

"The question in this law suit is whether what they [defendant and her deceased husband] did with the 50 acres, . . . from January, 1939 to the date this suit was filed, to wit, on October 23, 1957, was an actual and visible appropriation of the 50 acres commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

This concession renders immaterial the testimony from the defendant and her witnesses as to their activities upon the land during the period 1918–1939, and we need not recount the evidence thereof.

█ In order to prevail under the ten-year statute of limitations defendant labored under the burden of establishing by competent evidence that she and her deceased husband had been in peaceable and adverse possession of the land, as defined in Tex.Rev.Civ.Stat. art. 5515, cultivating, using or enjoying the same for a period of ten

actual and visible appropriation of the land in question, commenced and continued un-

der a claim of right inconsistent with the claim of another."

continuous years, as required under Tex. Rev.Civ.Stat. art. 5510.

In the recent case of *Chapa v. Garcia*, 513 S.W.2d 953, 956 (Tex.Civ.App., San Antonio 1974, writ ref'd n.r.e.), Justice Klingeman has reviewed the leading cases upon the subject, and we take this summary therefrom as stating the rule governing defendant's burden.

"One who seeks to establish title to land by virtue of the statute of limitations assumes the burden of proof upon this issue and the proof must be clear and satisfactory. . . . The claim of right must be manifested by declaration, or by open and visible act. If there is no verbal assertion of claim to the land brought to the knowledge of the landowner, the adverse possession must be so open and notorious and manifested by such open or visible act or acts that knowledge on the part of the owner will be presumed." (Citations omitted.)

The tract of land in question comes out of a certain 300 acre tract acquired by Alfred Gandy, the father-in-law of defendant by deed from his brother in 1910. In 1917 he conveyed the 50-acre tract to his daughter, Annie Gandy, who later conveyed it to T. S. Henderson, grandfather of plaintiff. Alfred Gandy was not the owner of the 50-acre tract at the time he executed a deed of trust to the Federal Land Bank; but, nevertheless, that instrument included within the description the 50-acre tract and the "York Hog Pasture" tract mentioned in fn. 1, *supra*. This mistaken description was contained in each succeeding instrument in defendant's chain of title so that when she and her deceased husband purchased the remnants of the A. Gandy tract, some 190 acres in 1939, the conveyance included the land in controversy here, notwithstanding plaintiff's ancestors had a valid record title thereto from the sovereignty of the soil. Thus, a junior chain of title was set up by the original mistaken description in 1919.

■ Plaintiff's deed to the 50-acre tract was of record at the time defendant acquired the junior title just mentioned. It was valid as to all subsequent purchasers, including defendant. Tex.Rev.Civ.Stat. Ann. art. 6631; *Texas Consolidated Oils v. Bartels*, 270 S.W.2d 708, 711 (Tex.Civ.App., Eastland 1954, writ ref'd).

At all times material to the period of time involved (1939–1957), the "York Hog Pasture" was enclosed with a fence maintained by its owners. The particular land involved here, along with defendant's larger tract, was enclosed by a perimeter fence which connected with the York pasture fence. There was no interior fencing which separated the 50-acre tract from defendant's land. As defendant said, "[there was] [j]ust one fence around the whole 300 acres . . . including the 61 acres [in the York Hog Pasture]." At another time in her testimony she testified that there had never been a fence around the 50-acre tract "since I have known it." To make it completely clear, she reiterated this testimony by stating that "[t]he 50 [acre tract] is not fenced off separate [*sic*]."

During the critical period, 1939–1957, no improvements of any nature were made to the 50-acre tract, and defendant maintained her home upon portions of her larger tract some distance from the land involved here.

The defendant's testimony as to the use made of the 50-acre tract during the critical period leaves much to be desired. Taking her testimony in its most favorable light, it reveals that small patches of the land were used to raise tomatoes, watermelons, corn and peanuts "and things like that." This line of questioning by her counsel illustrates the unsatisfactory nature of the proof:

"Q. Are you telling me, Mrs. Gandy, that prior to 15 years ago your husband *more or less* farmed this land?

"A. That is right.

"Q. And you also had cattle grazing on it?

"A. Yes." (Emphasis supplied.)

■ Defendant held possession of the land to the north and west of the 50-acre

tract under deed; and, in order to establish adverse possession of the 50-acre tract, it was necessary for her to "[h]ave actual possession of such additional land of such character as of itself will give notice of an exclusive adverse possession and mature into title after the statutory period." *Harmon v. Overton Refining Co.*, 130 Tex. 365, 109 S.W.2d 457, 460 (1937); *Henderson v. Goodwin*, 368 S.W.2d 800, 802 (Tex.Civ. App., Beaumont 1963, no writ). Testimony such as that set out above does not furnish the necessary notice required by our case law. Cultivation upon a "more or less" basis will not discharge a claimant's burden. In *Odem v. Leahy*, 264 S.W. 218, 219 (Tex. Civ.App., San Antonio 1924), the Court said:

> "To acquire the title to another man's property, the possession and use must be hostile, adverse, unqualified, and unmistakable to the true owner. *The flag raised and planted over the property, so to speak, must not be allowed to dip, but to float continuously.*" (Emphasis supplied.)

Thus tested, defendant's claim must rest upon the grazing of cattle upon the land involved. But the mere occupancy of land by grazing live stock upon it without substantial enclosures or other permanent improvements—as in this case—is not sufficient to support a plea of limitations under our statutes. *De Las Fuentes v. MacDonell*, 85 Tex. 132, 20 S.W. 43, 44 (1892); *Orsborn v. Deep Rock Oil Corp.*, 153 Tex. 281, 267 S.W.2d 781, 785 (1954); *McDonnold v. Weinacht*, 465 S.W.2d 136, 141–142 (Tex.1971).

After a careful review of the record under the applicable standards, we find no reversible error and the judgment of the trial court is affirmed.